Roxana Marchosky, Cambridge, Mass., for plaintiff, appellant.

David H. Sempert, with whom Jane A. Treen and Cornell & Gollub, Boston, Mass., were on brief, for defendant, appellee.

Before TORRUELLA and CYR, Circuit Judges, and BOWNES, Senior Circuit Judge.

CYR, Circuit Judge.

Appellant Linda Siegal brought a product liability action against American Honda Motor Co., Inc. ("Honda") after her son was killed while riding a motorcycle. The district court excluded the motorcycle from evidence and entered summary judgment in favor of Honda. We affirm.

**Linda SIEGAL, Administratrix of the Estate of Brian D. Siegal, Plaintiff, Appellant,**

v.

**AMERICAN HONDA MOTOR CO., INC., Defendant, Appellee.**

**No. 88–1129.**

United States Court of Appeals, First Circuit.

Heard Sept. 12, 1990.

Decided Dec. 18, 1990.

## I.

### BACKGROUND

On April 23, 1983, decedent Brian Siegal was driving his new 1983 Honda VF 750F motorcycle on Route 1 in Saugus, Massachusetts, when suddenly the traffic ahead of him slowed. Young Siegal braked the motorcycle, it went into a skid and he was thrown to his death. Several weeks later appellant mailed a claim letter to Honda, disclosing her intention to bring a product liability action. Two months later Honda issued a recall for the handlebar assembly on its 1983 Honda VF 750F motorcycle.

The recall letter stated that certain production errors could cause a loose fit between the handlebar tube and the handlebar arm, which in turn could snap a pin on the handlebar arm and allow the handlebar tube to loosen, resulting in loss of steering control.

On May 14, 1984, decedent's motorcycle was inspected by a products investigator employed by Honda, an engineer retained by Honda, an expert retained by appellant, and a motorcycle mechanic who inspected the braking system and the handlebar assembly at appellant's request. Appellant and her attorney were present. The motorcycle was test driven and photographed. No defect was found in the handlebar assembly by anyone. The motorcycle was returned to storage at appellant's residence following the inspection.

A second inspection was performed on June 19, 1987, by representatives of both parties, during which Honda discovered that the handlebar assembly was loose, corroded, and gouged with tool marks. The two Honda representatives who participated in both inspections concluded that the motorcycle had been altered. None of appellant's representatives at the 1984 inspection was present at the second inspection.

Honda filed a motion to dismiss the complaint or to exclude the motorcycle from evidence. After a two day hearing the district court concluded that the motorcycle had been "intentionally" altered and could not be considered reliable evidence of its condition at the time of the accident. The court denied the motion to dismiss, but excluded the motorcycle and all testimony relating to it in its altered state.

The district court then granted Honda's unopposed motion for summary judgment.[1] There is no version presented by the plaintiff, which, if believed, could dispute the present record that there was no defective condition of the motorcycle which was the proximate cause of the injury. The record is conclusive that at the time of the accident the motorcycle was in proper operating condition. *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 928 (1st Cir.1983). There being no material facts in dispute, summary judgment is appropriate.

## II.

### DISCUSSION

■ The first issue on appeal concerns whether the district court erroneously excluded the altered motorcycle.[2] After an extended evidentiary hearing, the court determined that the motorcycle had been intentionally altered following the first inspection and while within appellant's exclusive control.[3] These predicate findings of fact were not clearly erroneous. *See Henry v. Connolly*, 910 F.2d 1000, 1002 (1st Cir.1990); *Jackson v. Harvard University*, 900 F.2d 464, 466 (1st Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 137, 112 L.Ed.2d 104 (1990).

1. Appellant concedes that the entry of summary judgment was proper unless the exclusionary order was erroneous.

2. The district court expressly predicated its exclusionary ruling on Federal Rule of Evidence 901(a). Authentication is a condition precedent to admissibility. Under Federal Evidence Rule 901(a), the threshold "requirement of authentification ... is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901(a). At the threshold, the proponent must make a prima facie showing of authenticity sufficient to enable "a reasonable juror [to] find in favor of authenticity." 5 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 901(a)[01], at 901–16 to –17 (1983).

3. Appellant contends that Dr. Snider, an expert retained by Honda, disabled the handlebar assembly while test-riding the motorcycle. She further contends that Honda excluded appellant's representatives sometime during the 1984 inspection, at which time Honda may have altered the motorcycle. Nevertheless, the record is conclusive that no one, including appellant's own experts, was able to find any defect in the handlebar assembly during the first inspection. Appellant concedes that the motorcycle was within her exclusive control from May 14, 1984 until June 19, 1987, the date of the second inspection, when Honda discovered that the handlebar assembly had been altered. Dr. Karl Jakus, an expert retained by appellant, was present at the second inspection.

On the strength of "overwhelming" evidence, the district court concluded that "the motorcycle had been altered by someone loosening the fit between the handlebar arm and tube by use of a tool, like a wrench, and rocking the arm back and forth." The court further concluded that a corrosive agent "had been applied to the area of the fit in an attempt to loosen it." The district court did not abuse its discretion in determining that the proffered evidence had not been authenticated. *United States v. Santana,* 898 F.2d 821, 823 (1st Cir.1990); *United States v. Ladd,* 885 F.2d 954, 956 (1st Cir.1989); *Kissinger v. Lofgren,* 836 F.2d 678, 683 (1st Cir.1988).

The district court predicated its exclusionary ruling on its determination, unexceptionable in our view, that "[t]he crucial issue, the condition of the pin, could not be determined by any testing, destructive or otherwise, of the motorcycle in its present condition, nor could the motorcycle be restored to its former condition. It was not reliable, probative evidence and was not admissible." Appellant asserts that the district court made impermissible credibility determinations which formed at least part of the basis for its exclusionary ruling. We disagree.

The critical issue in the case was whether the handlebar assembly was defective at the time of the accident. Once the handlebar assembly had been altered beyond restoration to its condition at the time of the accident, it was no longer probative evidence. The credibility determinations made by the district court were unnecessary to its rulings that the altered handlebar assembly was neither authentic, i.e., what appellant represented it to be, *see* Fed.R.Evid. 901(a), nor relevant, i.e., probative of its condition at the time of the accident, *see* Fed.R.Evid. 401–402. Thus, unless the district court erred in its finding that the evidence had been altered beyond restoration, the exclusionary ruling under

Federal Evidence Rule 901(a) must stand. Our review of the record roundly confirms the district court findings and conclusions.

Summary judgment is warranted where the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine factual dispute and the moving party was entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *See also Lopez–Morales v. Otero–Fernandez,* slip op. No. 89–2133, at 5, 7–8 (1st Cir. Sept. 28, 1990) [915 F.2d 1557 (table)]; *Jensen v. Frank,* 912 F.2d 517, 520 (1st Cir.1990). Our review is plenary. *Petitti v. New England Tel. & Tel. Co.,* 909 F.2d 28, 30–31 (1st Cir.1990); *E.H. Ashley & Co. v. Wells Fargo Alarm Services,* 907 F.2d 1274, 1277 (1st Cir.1990).

The present suit comprises two causes of action: negligence and breach of warranty.[4] Appellant cannot prevail against the motion for summary judgment on either cause of action unless she has demonstrated to the district court, in the manner prescribed by Federal Rule of Civil Procedure 56, that there is no element essential to her cause of action which is not at least trialworthy. *See, e.g., Anderson v. Liberty Lobby,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1985) ("there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.") (citations omitted); *Brennan v. Hendrigan,* 888 F.2d 189, 191 (1st Cir.1989) (concise articulation of summary judgment procedure, standards and burdens).

■ The motion for summary judgment asserted that neither the negligence claim nor the warranty claim was trialworthy, as appellant produced no admissible evidence that the handlebar assembly was defective at the time of the accident. State Trooper

---

4. Under Massachusetts law there are three essential elements to a cause of action for negligence: a *breach* of a *duty* that *causes* the alleged injury. *Beaver v. Costin,* 352 Mass. 624, 227 N.E.2d 344 (1967). An actionable warranty claim additionally would require proof that the product was subject to warranty and that the manner of its use was reasonably foreseeable. *See* Mass.Gen.L. ch. 106, §§ 2–314, –318 (1990); *see also Allen v. Chance Manufacturing Co.,* 398 Mass. 32, 494 N.E.2d 1324 (1986).

Bennett, the investigating officer, testified that he examined the motorcycle at the accident scene and found nothing wrong with the handlebar assembly which would indicate a defect. Richard Piotti, decedent's friend and a witness to the accident, testified that he pushed the motorcycle off the road and noticed no looseness in the handlebar. Trooper Bennett concluded in the accident report that death was caused by "panic braking." Three eyewitnesses confirmed that traffic suddenly slowed in front of decedent's motorcycle. Decedent applied the front brake, which locked for a distance of more than 36 feet, and he was thrown over the handlebar. At the first motorcycle inspection, no representative of either party detected any defect in the handlebar assembly.

## III.

## CONCLUSION

As the motorcycle was the only evidence offered by appellant in support of her claim that the handlebar assembly was defective at the time of the accident, and the motorcycle was properly excluded under Federal Rules of Evidence 402, 403 and 901(a) due to its irreclaimable alteration after the accident, Honda was entitled to summary judgment as a matter of law.

*The judgment of the district court is affirmed. Double costs to appellee.*